UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TERRY TILLEY,

        Plaintiff,

                                  File No. 1:13-CV-221

v.

                                  HON. ROBERT HOLMES BELL

KALAMAZOO COUNTY ROAD
COMMISSION,

        Defendant.

_____/

**OPINION**

This is an employment discrimination case filed pursuant to Michigan's Whistleblower's

Protection Act (WPA), Elliott–Larsen Civil Right's Act (ELCRA), Persons With Disabilities Civil

Rights Act (PWDCRA), and the Family and Medical Leave Act (FMLA). The matter is before the

Court on Defendant's Motion for Summary Judgment. (ECF No. 29.) Plaintiff has filed a Response

(ECF No. 31) to which Defendant has filed a Reply (ECF No. 38). In addition, the parties have filed

over 1,000 pages of exhibits. Given the breadth and depth of the written briefs and evidence

presented, the Court holds oral argument is unnecessary for the disposition of the motions. For the

reasons that follow, the Court finds that there are no genuine issues of material fact, and will

therefore grant Defendant's motion.

**I.**

The following outline of facts are contained largely in Plaintiff's brief. (Pl.'s Resp. 1–8, ECF

No. 31.) Plaintiff began working as a driver for Defendant in October 1993. Traffic services director

John Byrnes promoted Plaintiff to sign shop supervisor in 1998.

In 2008, Joanna Johnson promoted Plaintiff to area supervisor when she eliminated the role

of sign shop supervisor. Plaintiff continued to supervise the remaining sign shop employee and also supervised projects such as drainage and brush cleaning for three townships in Kalamazoo County. Plaintiff reported primarily to Travis Bartholomew in his role as area supervisor and to Mr. Byrnes for his supervision of the shop sign employee. At unspecified times, employees reporting to him, township supervisors, and Mr. Byrnes all indicated that Plaintiff's job performance was good. Mr. Bartholomew's reviews of Plaintiff's performance were generally good, but contained constructive criticism on areas in which Plaintiff could improve in his new role. Plaintiff voiced general disagreement with the portions of Mr. Bartholomew's evaluations that were critical of his performance.

Evidence of a deterioration in Plaintiff's relationship with Mr. Bartholomew began to surface in 2010, when Mr. Bartholomew reprimanded Plaintiff and ordered him to attend Employee Assistance Program counseling. Plaintiff had allegedly displayed a disrespectful attitude toward Mr. Bartholomew. Mr. Bartholomew again reprimanded Plaintiff in January 2011 for failing to submit 2010 organizational goals by the deadline Mr. Bartholomew set. Three incidents in 2011 precipitated Plaintiff's termination.

First, in the spring of 2011, Mr. Bartholomew requested that Plaintiff "prepare a # 3 job classification job description." Over the next several months, Plaintiff submitted drafts to Mr. Bartholomew, which he sent back with corrections. Second, in early June 2011, Mr. Bartholomew directed Plaintiff to prepare written reprimands for five employees who had committed safety violations. Over the next two months, Plaintiff attempted to prepare the reprimands to Mr. Bartholomew's satisfaction. Plaintiff submitted a number of drafts that Mr. Bartholomew rejected either because they were improperly formatted, failed to include all relevant information, failed to

include all relevant documentation, or because they contained errors of spelling and grammar.

Finally, in late June 2011, Plaintiff was at a job site on Berkley Street in Kalamazoo Township. The residents used their vehicle to block him in their driveway because they were upset with the drainage issues at their property. Mr. Bartholomew called the police, and the residents claimed that Plaintiff bumped their car as he attempted to leave, but that claim was never substantiated. Nevertheless, Mr. Bartholomew directed Plaintiff to obtain the police report and submit his own written report of the incident. Plaintiff was unable to obtain the police report until July 18, 2011, because the officer in charge of providing such reports was on vacation.

On July 20, 2011, having received none of the above three assignments in a satisfactory state, Mr. Bartholomew reprimanded Plaintiff and suspended him for five days. The reprimand gave Plaintiff three deadlines: July 28, 2011, to complete the employee reprimands; July 29, 2011, to complete his report of the Berkley Street incident, including obtaining the police report; and August 1, 2011, to complete the revised job description.

Plaintiff submitted the employee reprimands prior to July 28. Plaintiff gave the final draft of his report on the Berkley Street incident to area superintendent Bill DeYoung while he was on suspension. Mr. DeYoung gave it to Mr. Bartholomew on August 3. Plaintiff never submitted the revised job description.

On August 1, 2011, Plaintiff was preparing his final edit of the job description. Plaintiff intended to complete the task by the end of the day, but that morning began sweating profusely and having severe chest pain. A co-worker took him to the emergency room.

Plaintiff was discharged from the hospital on August 2. His wife informed Defendant's human resources department that he would not return to work until August 5. On August 5,

Plaintiff's doctor gave him a medical release excusing him from work until October 2011. Plaintiff's wife brought the release to Defendant on August 8 and requested FMLA paperwork, which Plaintiff received on August 9. The FMLA paperwork indicated that Plaintiff was eligible for benefits, and he presented it to his doctor shortly thereafter. Plaintiff turned in the paperwork on August 17.

However, on August 12, 2011, Defendant mailed a letter terminating Plaintiff's employment. The termination letter detailed Plaintiff's failure throughout the course of 2011 to complete the tasks assigned to him in a timely manner and to communicate his progress on them, specifically the three assignments detailed above.

## II.

The Federal Rules of Civil Procedure require the Court to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In evaluating a motion for summary judgment the Court must look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). When the moving party will not carry the burden of proof at trial, the party must identify "those portions of pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986) (internal quotations omitted). A defendant moving for summary judgment is not required, however, to "support its motion with affidavits or other similar materials negating the opponent's claim." *Id.*

In considering a motion for summary judgment, "the district court must construe the

evidence and draw all reasonable inferences in favor of the nonmoving party." *Martin v. Cincinnati Gas & Elec. Co.*, 561 F.3d 439, 443 (6th Cir. 2009) (citing *Jones v. Potter*, 488 F.3d 397, 403 (6th Cir. 2007)). Nevertheless, the mere existence of a scintilla of evidence in support of a non-movant's position is not sufficient to create a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The proper inquiry is whether the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.*; *see generally Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476-80 (6th Cir. 1989)

> In his response to Defendant's motion, Plaintiff states:
>
> Although [P]laintiff believes there is evidence to support his retaliation claim under the ELCRA and the WPA, he will not pursue it, because he believes his claim of age discrimination under the ELCRA is more cogent. He will also not pursue any claims under the Persons With Disabilities Civil Rights Act.

(Pl.'s Resp. 1, ECF No. 31.) Plaintiff has therefore failed to respond to Defendant's arguments regarding Counts I, II, and IV. Rule 56 addresses such a situation as follows:

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
> (1) give an opportunity to properly support or address the fact;
> (2) consider the fact undisputed for purposes of the motion;
> (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or
> (4) issue any other appropriate order.

Fed. R. Civ. P. 56(e). Because Plaintiff has voluntarily chosen not to dispute the facts with regard to Counts I, II, and IV, and because Plaintiff did not move to voluntarily dismiss those claims, the Court will consider undisputed the facts offered by Defendant with respect to those counts under Rule 56(e)(2) and grant summary judgment on those counts under Rule 56(e)(3) to the extent Defendant is entitled to it.

**A.      Uncontested Claims: Counts I, II, and IV**

Plaintiff has failed to respond to Defendant's arguments regards Counts I, II, and IV. Defendant argues in each instance that Plaintiff has failed to make out a prima facie case of either retaliation or discrimination.

To establish a prima facie case of retaliation under either the ELCRA or the WPA, a plaintiff must show that "(1) the plaintiff was engaged in protected activity as defined by the act, (2) the plaintiff was discharged or discriminated against, and (3) a causal connection exists between the protected activity and the discharge or adverse employment action."*West v. Gen. Motors Corp.*, 665 N.W.2d 468, 471-72 (Mich. 2003). Plaintiff's claimed protected activity under the WPA is reporting that one of Defendant's supervisors was driving while intoxicated. Plaintiff made his report in 2006 and was terminated in 2011. Defendant argues that this five-year gap and an intervening change in management undermines the causation prong. More important here is the fact that Joanna Johnson testified in her affidavit that Plaintiff's report had nothing to do with his termination. The Court considers this fact established pursuant to Rule 56(e)(2). There is therefore no causal connection between Plaintiff's allegedly protected activity and his termination, and he cannot make out a prima facie case under the WPA. Summary judgment in favor of Defendant is therefore appropriate with respect to Count I.

With respect to the ELCRA, Plaintiff claims Defendant retaliated against him because he was "referenced" in another lawsuit against Defendant; that he complained to a "commissioner . . ., an investigator, and a state representative . . ." about age discrimination; and that he later "participated" in that same lawsuit. (Def.'s Br. 18–19, ECF No. 30.) Defendant argues that even if any of these activities is protected, there exists no evidence that any of these activities led to Plaintiff's

termination. The Court considers this fact established pursuant to Rule 56(e)(2). There is therefore

no causal connection between Plaintiff's allegedly protected activity and his termination, and he

cannot make out a prima facie case of retaliation under the ELCRA. Summary judgment in favor

of Defendant is therefore appropriate with respect to Count III.

Finally, "To establish a prima facie case of discrimination under the PWDCRA, a plaintiff

must demonstrate (1) that [he] is disabled as defined by the PWDCRA, (2) that the disability is

unrelated to [his] ability to perform the duties of a particular job, and (3) that [he] was discriminated

against in one of the ways described in the statute." *Lown v. JJ Eaton Place*, 598 N.W.2d 633, 636

(Mich. Ct. App. 1999). Defendant argues that Plaintiff's only claim that he is disabled in his

complaint is that Mr. Bartholomew "regarded him as mentally ill" and ordered him to attend

counseling. (Def.'s Br. 21, ECF No. 30.) Defendant explains that the counseling to which Plaintiff

refers was career counseling he was ordered to attend because of disciplinary issues. Defendant

avers that no evidence exists that it considered Plaintiff mentally ill nor that he was terminated or

treated differently because of it. The Court considers this fact established pursuant to Rule 56(e)(2).

Plaintiff therefore cannot make out a prima facie case of discrimination under the PWDCRA.

Summary judgment in favor of Defendant is therefore appropriate with respect to Count IV.

### B.    Count III: Age Discrimination

A claim of age discrimination under Michigan's ELCRA is properly evaluated under the

*McDonnell Douglas* burden-shifting framework. *Cicero v. Borg-Warner Auto, Inc.*, 280 F.3d 579,

584 (6th Cir. 2002). In order to make out a prima facie case of age discrimination, a plaintiff must

demonstrate that he was (1) a member of a protected class; (2) qualified for his job; (2) suffered an

adverse employment action; and (4) was replaced by a younger person, or "that the defendant treated

the plaintiff differently than persons of a different age class who engaged in the same or similar conduct." *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 818 (6th Cir. 2011); *Town v. Mich. Bell Tel. Co.*, 568 N.W.2d 64, 68 (Mich. 1997). If a plaintiff makes out a prima facie case, the burden shifts to the defendant to articulate a legitimate nondiscriminatory reason for the adverse action. *Town*, 568 N.W. 2d at 68. The burden then shifts back to the plaintiff to show that the defendant's stated reason is merely a pretext for unlawful discrimination. *Id.*

Defendant argues that "[t]he basis for Plaintiff's claim of age discrimination is at best unclear." (Def.'s Br. 10, ECF No. 30.) Defendant continues, "[t]he thrust appears to be that Plaintiff's supervisor, Travis Bartholomew, was unfair to him." (*Id.*) The Court's review of Plaintiff's arguments confirms this.

As detailed above, Plaintiff had disagreements with Mr. Bartholomew over the quality of his work and the types of assignments he was given. In his response, Plaintiff argues that he never asked for his 2008 promotion, and that such was merely an attempt to set him up to fail by placing him under a biased supervisor. Plaintiff's remaining arguments center around his perceived persecution at the hands of Mr. Bartholomew and Ms. Johnson. Plaintiff cites other county employees in supervisory roles criticizing Defendant's decision to terminate him.

Plaintiff has failed to make out a prima facie case of age discrimination. Assuming for the sake of argument that Plaintiff, at age 56 during the relevant time period, was a member of a protected class, was qualified for his job, and faced an adverse action in his termination, he has nevertheless failed to meet the fourth prong. Indeed, Plaintiff has failed to allege that *anyone*, let alone someone younger than him, was hired to replace him. Further, he has failed to show that someone outside his class was treated differently than him in similar circumstances. At best, he has

shown that Mr. Bartholomew had some unexplained personal animus toward him. But he has failed

to show, or even to allege, that Mr. Bartholomew's animus was rooted in Plaintiff's age.

Even if Plaintiff had made out a prima facie case, Defendant has provided a legitimate, non-

discriminatory reason for his termination. Plaintiff's termination letter details the shortcomings of

his performance and quotes the relevant portions of the personnel manual that justify his dismissal

under the circumstances. The Court further does not find that Defendant's proffered justification is

pretextual. As explained above, Plaintiff has not raised any factual issues with regard to whether his

termination was motivated by discriminatory animus. Summary judgment in favor of Defendant is

therefore appropriate with respect to Count II.

**C.      Count V: Family and Medical Leave Act Interference and Retaliation**

Plaintiff claims that Defendant interfered with his rights under the FMLA by refusing to

allow him to come back to work after he took FMLA leave. Plaintiff also claims that Defendant

retaliated against him under the FMLA by terminating him. In order to be entitled to any relief under

the FMLA, an employee must be eligible within the meaning of the Act. *Donald v. Sybra, Inc.*, 667

F.3d 757, 761 (6th Cir. 2012).

Defendant argues that Plaintiff is not an eligible employee under the FMLA. Specifically,

Defendant cites the statutory definition and exclusions of an eligible employee, 29 U.S.C.

§ 2611(2)(B), noting that to be eligible for FMLA benefits, an employee must work at a location

where the employer has at least 50 employees within 75 miles. Defendant submitted affidavits and

other documentation demonstrating that at the time Plaintiff attempted to take leave under the

FMLA, it had fewer than 50 total employees. (*Id.* at 23–24.)

Plaintiff argues that Defendant's line of reasoning "is based on an anomaly in the law." (Pl.'s

Resp. 22, ECF No. 31.) Plaintiff argues that because a public agency is included as an employer under § 2611(4)(A)(iii) the exclusion of certain employees under § 2611(2)(B) "creates an oxymoron that a public employer with less than 50 employees is covered under the FMLA but none of its employees could ever take a leave under the FMLA. This, to iterate, makes no sense." (Pl.'s Resp. 22–23, ECF No. 31.) He concludes, "this court should apply the 50 employee eligibility threshold only to non public employees." (*Id.* at 23.) Alternatively, Plaintiff argues that Defendant actually did have more than 50 employees at the time of his termination because it employed 3 people at the Kalamazoo Area Transportation System (KATS). Defendant has submitted evidence, however, that it never employed more than 50 people, even if the "KATS employees" are counted.

Plaintiff's argument that the Court should interpret the statute so that the exclusion under § 2611(2)(B) does not apply to public agencies lacks merit. As recently as 2013, the Sixth Circuit applied the 50 employee requirement to a public entity. *See Mendel v. City of Gibraltar*, 727 F.3d 565, 568–69 (6th Cir. 2013) (evaluating whether "volunteer" firefighters were employees of a municipality for purposes of the §2611(2)(B)). It is clear that the law of this circuit mandates application of the 50 employee requirement to a public entity. Therefore, because Defendant did not have 50 or more employees at the relevant time, Plaintiff is not eligible for protection under the FMLA.

Anticipating this holding, Plaintiff argues in the alternative that Defendant "should be precluded from arguing the 50 employee eligibility threshold by the doctrine of equitable estoppel." (Pl.'s Resp. 23, ECF No. 31.) For an otherwise ineligible employee to be entitled to FMLA benefits under the doctrine of equitable estoppel, a plaintiff must show that (1) his employer made a definite misrepresentation as to his FMLA eligibility; (2) he reasonably relied on the misrepresentation; and

(3) he was detrimentally affected by his reasonable reliance on the misrepresentation. *Dobrowski v. Jay Dee Contractors, Inc.*, 571 F.3d 551, 557 (6th Cir. 2009). Plaintiff's claim to equitable estoppel fails because he cannot show reasonable reliance.

The *Dobrowski* court held that reasonable reliance requires a showing that a plaintiff "'change[d] his position' in reliance on the belief that his leave would be FMLA-protected." *Dobrowski*, 571 F.3d at 557 (quoting *Heckler v. Cmty. Health Servs. of Crawford Cnty.*, 467 U.S. 51, 61 (1984)). Here, the only argument as to reliance that Plaintiff has given is that "he would have found some way to complete and have submitted the job classification report to the defendants [sic] before the end of the day on August 1, 2011, despite his illness." (Pl.'s Resp. 24, ECF No. 31.) Plaintiff submitted no evidence, however, that he would have foregone taking the extended leave as recommended by his doctor had he known he was not eligible for leave under the FMLA. Therefore he is not entitled to FMLA leave under the doctrine of equitable estoppel. Summary judgment in favor of Defendant is therefore warranted on Plaintiff's FMLA claims.

## III.

For the foregoing reasons, the Court holds there are no genuine issues of material fact with regard to Plaintiff's claims under Michigan's Whistleblower's Protection Act, Elliott–Larsen Civil Right's Act, Persons With Disabilities Civil Rights Act, and the Family and Medical Leave Act . The Court will therefore enter summary judgment in favor of Defendant.

The Court will issue an Order and Judgment consistent with this Opinion.


Dated: <u>May 13, 2014</u>                    /s/ Robert Holmes Bell
                                    ROBERT HOLMES BELL
                                    UNITED STATES DISTRICT JUDGE